UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

COUNTY OF SUFFOLK

-------------------------------------------------------------------------------X

HARSHARAN SETHI,

                            Plaintiff,

                  -against-

PLX INC., ITAI VISHNAI, MALCOLM HUMPHREY

                        Defendants.

-------------------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 04 2022 ★

LONG ISLAND OFFICE

Index No.:

Plaintiff Demands Jury Trial

CV 22 6733

Verified Complaint

Venue based on Plaintiff's residence and Defendants business

**MORRISON, J.**

LINDSAY, M.J.

     Plaintiff Harsharan Sethi, representing self as *Pro se,* individually complaining of Defendants individually and collectively, respectfully sets forth and alleges, upon information and belief, of the following:

### NATURE OF THE ACTION

1. This lawsuit is brought by Plaintiff on behalf of himself under:
    a. The False Claims Act, 31 U.S.C. 3729 et seq. (the "False Claims Act"), to recover damages and penalties against Defendants for reprisal and retaliation and constructive discharge, in violations of the law.
    b. Title 41 USC Section 4712, to recover damages and penalties against Defendants for reprisal and retaliation and constructive discharge, in violations of the law.
    c. NYLL Section 215, to recover damages and penalties against Defendants for reprisal and retaliation and constructive discharge, in violations of the law.

2. This lawsuit is brought by Plaintiff on behalf of himself, to recover damages and penalties against Defendants under:
    a. Violation of mandated company and public policy requiring illegal work from Plaintiff.
    b. Breach of Implied Covenant of Good faith and Fair Dealing.

1

3.  This lawsuit also seeks to recover overtime compensation and other damages under FLSA for Plaintiff who worked for PLX Inc.

4.  PLX INC. is a manufacturer, supplier, contractor and subcontractor of monolithic optics that included inter alia CDI (covered Defense information), for Defense, Aerospace, Lockheed Martin (LMCO), Boeing etc. and commercial industries, to whom it supplies products under strict federal/defense regulations, and are regulated by various federal and aerospace agencies including but not limited to, by Department of Defense (DoD). PLX INC.'s home office is located at 40 West Jefryn Blvd, Deer Park, NY 11729.

5.  Upon information and belief, PLX INC. is engaged in inter-state and inter-continent/international commerce with multiple offices and users spread across states and continents.

6.  According to its website *https://www.plxinc.com/applications/military*:
    *PLX INC. is a valued optical technology source for Military and Space industries and is a supplier for Lockheed Martin Corporation (LMCO), Boeing, Northrop Grumman Corporation and Raytheon, amongst others. For Lockheed Martin Corporation Missiles and Fire Control division, PLX produced inter alia <u>Modernized Boresight Module (M-BSM)</u> for the Arrowhead Program. The Arrowhead system is designed to enhance the target capabilities of the AH-64D Apache Longbow Combat Helicopter.*

7.  To carry out their services, PLX INC. hired Plaintiff as the IT Engineer (Information Technology Engineer), who was tasked with control of user IT systems and network related applications, data, and information security access, desktop and user support, maintenance, setup, troubleshooting, repair, computer cleaning, revamping, recycling, resetting, removing malicious viruses, spywares, malwares, backup and archive, making them available for use and re-use for PLX INC. users. Plaintiff's primary duties and responsibilities involved providing PLX INC.'s staff/users with technical desktop support, ensuring that their computers could connect to the company's network and servers and to make sure their computers were working properly in their cubicles with each user having appropriate user access to IT systems, network, data and information.

8.  Plaintiff did not manage anyone and Plaintiff's primary duties did not include exercise of discretion and or independent judgment with respect to any matters of significance to management or general business operations of the employer.

9.  Despite being a non-exempt computer employee, Defendant failed to properly pay Plaintiff overtime compensation at 1.5 times his regular rate of pay when he worked over 40 hours per week. In that regard, Plaintiff received a set salary, payable weekly, regardless of the number of hours he worked each week. Moreover, Defendants provided Plaintiff with paystubs that failed to reflect his actual hours worked and did not keep track of the number of hours worked by Plaintiff each day and week.

10. Plaintiff brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. 201 et seq. ("FLSA").

11. Plaintiff also brings this action to remedy violations of the of the retaliation provisions of the False Claims Act, violations of wage and hour law under the NYLL, Article 6, 190 et seq., and Article 19, 650 et seq., and the supporting New York State Department of Labor Regulations.

12. Plaintiff also brings this action to remedy all violations relevant to his constructive discharge alleged herein as applicable under various federal and state laws.

## THE PARTIES

**Harsharan Sethi**

13. Harsharan Sethi, Plaintiff (hereinafter "Plaintiff"), is an adult individual who is a resident of Nassau County, New York.

14. Plaintiff was employed by PLX INC., as IT Engineer (Information Technology Engineer) from on or around August 2, 2021 through on or around November 8, 2021.

15. Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

**Corporate Defendant**

**PLX Inc.**

16. PLX Inc., is a federally controlled/regulated domestic business corporation organized and existing under the laws of the State of New York. PLX Inc. is a federal and aerospace regulated manufacturer, supplier contractors and subcontractors of US defense related products, parts and other monolithic optics for US Defense/Aerospace industry. Also see para 6 herein above.

17. PLX INC.'s principal executive office is located at 40 West Jefryn Blvd, Deer Park, NY 11729 and operated as federal contractor, sub-contractor for Aerospace industry and US Defense including but not limited to US Military.

18. PLX INC. is covered employer within the meaning of the FLSA, NYLL, and at all times relevant, employed Plaintiff.

19. At all times relevant, PLX Inc. has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll.

20. Upon information and belief PLX INC. is engaged in inter-state and inter-continent commerce with multiple offices and users spread across states and continents.

21. Upon information and belief, at all relevant times Defendants were actively involved in managing the day-to-day operations of PLX INC., and has also had the power to stop any illegal practices including illegal pay practices and illegal business practices at PLX INC. that harmed Plaintiff.

22. Upon information and belief at all relevant times, PLX Inc. has had the power to transfer the assets and/or liabilities of PLX INC., and has had the power to close, shut down, and/or sell PLX INC.

23. Upon information and belief, at all relevant times, PLX INC. has had an annual gross volume of sales in excess of $500,000.

**Individual Defendants**
**Itai Vishnai CEO:**

24. Upon information and belief, at all relevant times Itai Vishnai was the CEO, owner, manager, stockholder, partner, and controlled operations of PLX INC.

25. At all relevant times, Itai Vishnai has had power over personnel decisions at PLX INC., including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment and has had power over payroll decisions at PLX Inc., including the power to retain time and/or wage records.

26. At all relevant times Itai Vishnai had the power to hire and fire plaintiff, supervise and control his work schedules, establish and control the terms and conditions of his employment, and determine the rate and method of his compensation.

27. Upon information and belief, at all relevant times Itai Vishnai had ownership interests in PLX INC.

28. At all relevant times Itai Vishnai was actively involved in managing the day-to-day operations of PLX INC., and has also had the power to stop any illegal practices including but not limited to, illegal pay practices at PLX INC. that harmed Plaintiff.

29. Upon information and belief at all relevant times, Itai Vishnai has had the power to transfer and or cause transfer of the assets and/or liabilities of PLX INC., and has had the power to close/sell and or power to cause, closure/sale/shut down of PLX INC.

30. Upon information and belief at all relevant times Itai Vishnai had the power to enter into and or cause contracts on behalf of PLX INC.

31. Itai Vishnai is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff, and is sued herein in his individual and official capacity.

**Malcolm Humphrey CTO:**

32. Upon information and belief, at all relevant times Malcolm Humphrey was the CTO, is a citizen of United Kingdom, and is owner, manager, stockholder, partner, and controlled operations of PLX INC.

33. At all relevant times, Malcolm Humphrey has had power over personnel decisions at PLX INC., including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment and has had power over payroll decisions at PLX Inc., including the power to retain time and/or wage records.

34.    At all relevant times Malcolm Humphrey had the power to hire and fire plaintiff, supervise and control his work schedules, establish and control the terms and conditions of his employment, and determine the rate and method of his compensation.

35.    Upon information and belief, at all relevant times Malcolm Humphrey had ownership interests in PLX INC.

36.    At all relevant times Malcolm Humphrey was actively involved in managing the day-to-day operations of PLX INC., and has also had the power to stop any illegal practices including but not limited to, illegal pay practices at PLX INC. that harmed Plaintiff.

37.    Upon information and belief at all relevant times, Malcolm Humphrey has had the power to transfer and or cause transfer of the assets and/or liabilities of PLX INC., and has had the power to close/sell and or power to cause, closure/sale/shut down of PLX INC.

38.    Upon information and belief at all relevant times Malcolm Humphrey had the power to enter into and or cause contracts on behalf of PLX INC.

39.    Malcolm Humphrey is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff, and is sued herein in his individual and official capacity.

**JURISDICTION AND VENUE**
40.    This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. 3730(a)(h), 28 U.S.C. 1331, 1345, and 1367.

41.    This Court has jurisdiction over the claims brought under Title 41 USC Section 4712.

42.    This Court has subject matter jurisdiction over the FLSA and NYLL claims pursuant to 28 U.S.C. 1331, 1332 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367.

43.    This Court has jurisdiction over all the claims nature of action as stated herein above.

44.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant conducts business in this District.

45.    **ABBREVIATIONS used within this complaint:**
       NIST - National Institute of Standards and Technology.
       CMMC - Cybersecurity Maturity Model Certification.
       CDI – Covered Defense Information.
       LMCO – Lockheed Martin Company.

5

**FACTUAL BACKGROUND AND ALLEGATIONS**

**Retaliation Against Plaintiff**

46.   Plaintiff was employed by Defendant PLX INC. as IT Engineer from on or around August 2, 2021 through November 8, 2021.

47.   Plaintiff reported to CEO Itai Vishnai and CTO Malcolm Humphrey.

48.   Plaintiff was constructively discharged on or about November 8, 2021.

49.   During his employment Plaintiff found that Defendants were not CMMC and NIST compliant with major requirements, which compliance was fully regulated and required by US aerospace industry and DoD of all contractors and or subcontractors like PLX Inc. supplying defense related parts/products including but not limited to, US Defense related data, material, information, plans, diagrams etc., to aerospace industry.

50.   During his employment Plaintiff found serious violations of rules law and regulations pertaining to compliance and reporting of compliance at PLX INC. During his employment Plaintiff found serious violations of DoD and aerospace regulated network, data security requirements including but not limited to violations of CMMC and NIST involving inter alia CDI which covered US Defense related data, material, information, plans, diagrams, products, parts etc., that Plaintiff believed could have serious repercussions to US aerospace industry, DOD, and US National Security.

51.   Furthermore, during his employment Plaintiff found Defendants had intentionally filed false security compliance documents, claims and certifications under NIST & CMMC with Aerospace industry including but not limited to LMCO, Boeing, etc., and thereby with DoD on controlled and regulated websites.

52.   Upon information and belief Defendants did this to obtain undue orders worth millions that they would have otherwise not received if they would have truthfully filed their non-compliance certifications and or truthful claims of being non-compliant with and on such Aerospace and DoD controlled and regulated sites including but not limited to, on Exostar secured websites.

53.   Upon information and belief, all such serious known/intentional violations at PLX Inc. were repetitive and habitual and collaboratively and collusively conspired and perpetrated individually, collectively and collaboratively by Defendants, who violated rules, laws, regulations and who engaged in misrepresentations, fraudulent concealments and omissions, against aerospace and federal regulators, with corrupt intent inter alia to obtain purchase orders worth millions under false pretenses and by filing false claims of being compliant of federal regulatory requirements  under CMMC and NIST, with intent to maintain and or retain  such purchase orders contracts obtained on such material misrepresentations.

54.   As a federal and aerospace regulated manufacturer, supplier contractors and subcontractors of US defense related products, parts and other monolithic optics for Defense, Aerospace industry, PLX Inc.

6

routinely received, handled and transmitted confidential CDI (covered Defense information) which included but was not limited to, US Defense related data, material, information, plans, diagrams of products, parts etc., to and fro from Defense, Aerospace and commercial industries to whom they supply under strict Aerospace/federal/defense regulations and for which they are regulated by various federal and aerospace agencies including but not limited to, by Department of Defense (DoD) that requires PLX Inc. to be fully NIST and CMMC compliant to obtain such information and purchase orders from federally controlled and regulated aerospace industry.

55. Under the defense and aerospace regulations, for PLX Inc to become suppliers, contractors and or sub-contractors of federally controlled aerospace industry and or Department of Defense and receive orders and CDI etc, PLX Inc was required to be in strict compliance of, inter alia, NIST, CMMC, cyber security and confidentiality.

56. Upon information and belief, violations of such mandatory compliance also jeopardized and undermined national security.

57. Upon information and belief, to obtain purchase orders for their products including monolithic optics that included but was not limited to, PLX Inc receiving, handling, storing and transmitting CDI (Covered Defense Information) from the aerospace industry under aerospace and DoD regulations, PLX Inc was specifically and mandatorily required to be NIST, CMMC and cyber security and confidentiality compliant.

58. As of the day of Plaintiff joining the company and Plaintiff being retaliatorily and constructively discharged, PLX Inc was neither compliant under CMMC nor was compliant under NIST, but it falsely reported it being compliant.

59. During review of the cyber security compliance issues of PLX Inc., Plaintiff was provided documents from which Plaintiff discovered information backed by sets of other documents verifying that PLX Inc. had been previously filing false claims of compliance under CMMC and NIST requirements with the Aerospace and DoD, where PLX Inc had been falsely filing documents claiming 90%-100% CMMC and NIST compliant so as to obtain and or continue obtaining orders from aerospace industry and DoD by falsifying such documents making false compliance claims on Aerospace and DoD websites including but not limited to at Exostar sites maintained by and for aerospace industry and DoD under DoD regulations.

60. In or around October 2021 Plaintiff discovered such documents with false claims and filings that were filed by PLX Inc., with aerospace industry sites and DoD, with deliberate intent by PLX Inc to obtain and keep obtaining defense and aerospace orders from entities like Boeing, Lockheed Martin and or DoD, under false pretense of being CMMC and NIST compliant.

61. Under such documents, claims and filings that Plaintiff discovered were filed by Defendants before hiring Plaintiff, Defendants falsely claimed with the Aerospace industry and thereby with DoD that PLX Inc. was about 90% NIST compliant, when it was not even 10% fully NIST compliant. But Defendants now required Plaintiff to not only back their false claims with aerospace industry and

DoD, but also required Plaintiff to further file false claims with aerospace industry and DoD, on their behalf.

62.    Plaintiff brought such discovery of false filings to the CEO Mr. Itai Vishnai's and CTO Mr. Malcolm Humphrey's attention. But soon discovered that both was already aware of the false filings and in fact was himself involved in such false filings which were filed with Mr. Vishnai's knowledge and permissions by his friend the previous IT director Mr. Kevin Kavanagh.

63.    Plaintiff advised CEO Mr. Itai Vishnai that it will be considered a fraud by PLX Inc for making such false claims of compliance with Aerospace industry and DoD with intent to obtain orders on false pretenses. Plaintiff also advised Mr. Vishnai that the matter is serious and might also involve national security and homeland security.

64.    But Mr. Vishnai joked about it and stated that Plaintiff should not worry and should contact Mr. Vishnai's friend Kevin, the previous IT Director, and Kevin will help Plaintiff with how to manipulate compliance information and relative scores on Aerospace and DoD website to show 100% NIST compliance.

65.    Mr. Vishnai stated that Kevin had played around with the questionnaire answers and had figured out a way how to manipulate data and compliance information on aerpspace industry secure websites to show PLX Inc. as NIST compliant and increase PLX Inc.'s relative scores on the documents filed so as to show PLX as 90%-100% NIST compliant.

66.    Plaintiff was ordered by defendants to learn and do the same manipulation of data, information and numbers and file further false claims on the aerospace and DoD sites including Exostar sites stating that PLX Inc was now 100% NIST compliant so that PLX Inc could get held up orders from aerospace industry including but not limited from Lockheed Martin, Boeing and DoD under DoD regulations.

67.    Plaintiff refused to support, propagate and further file any such false claims of Defendants being 100% NIST compliance with DoD and aerospace sites, stating it could be considered a federal crime to file such false claims. Infact Plaintiff communicated and advised to Mr. Vishnai to stop claiming that PLX Inc. was 100% NIST compliant, as it was not even 10% fully compliant.

68.    The issue got further serious when in or around early October 2021, the Aerospace industry, LMCO held up PLX Inc.'s further purchase orders worth millions, demanding that PLX Inc. recertify their previous claims of being about 90% NIST compliant and also further required Defendants to now further certify and file that PLX Inc had now completed the balance 10% compliance and that PLX Inc. was now 100% fully NIST compliant.

69.    Upon information and belief, PLX Inc. orders were held back by Lockheed Martin, Boeing under DoD requirements till PLX recertified the previous claims of 90% NIST compliance and also now further certified that PLX Inc. is/was now fully 100% NIST compliant, as was required of them by aerospace industry including but not limited to, by LMCO, Boeing and or DoD under DoD regulations.

70. In or around October 2021, CEO Mr. Vishnai ordered Plaintiff to file false claims at DoD regulated aerospace sites Exostar and with DoD. Plaintiff was ordered by CEO Itai Vishnai to recertify the previous false claims made by the defendants stating that PLX was 90% NIST compliant. Plaintiff was further ordered by Mr. Vishnai to further file false claims with Aerospace industry and DoD that PLX Inc was now 100% NIST compliant.

71. At all relevant times of giving such orders to Plaintiff to falsify compliance filings, Mr. Vishnai was fully aware and had full knowledge of the facts that PLX Inc. was not even 10% fully NIST compliant and that there existed major security issues at PLX Inc. possibly also jeopardizing US National security. In fact, Mr. Vishnai himself was also fully aware that PLX Inc. was never NIST compliant at the time of previous false filings of compliance by the Defendants and still had made no progress after previous false filings. At all relevant times Defendants were fully aware that PLX Inc. was still not NIST compliant.

72. Plaintiff apprised Mr. Vishnai and Mr. Humprey multiple times that PLX Inc. was not NIST compliant and that Plaintiff just cannot file false compliance claims with aerospace industry and DoD.

73. But Plaintiff was repeatedly given such orders to file false compliance claims by Mr. Vishnai numerous times, even after Plaintiff refused to file any false claims on defendants' behalf and informed Mr. Vishnai numerous times that PLX Inc was not CMMC and NIST compliant and that it will be considered a fraud to file false claims concerning the aerospace industry, DoD and national security, with intent to obtain orders on false pretense.

74. In or around October 2021, Plaintiff raised multiple concerns about the previous false filings and orders being given to him to further falsify claims and documents, with CEO Itai Vishnai and also reported vocally and in writing to CTO Malcolm Humphrey, and also made HR Director Brian Lambert aware of the intentional serious violations of both federal and state rules, law and regulations, fraud, misrepresentations, including but not limited to fraudulent concealment, making such false claims of compliance to procure orders worth millions and even made CTO Mr. Humphrey and HR Director aware of the harassment and illicit demands being persistently made by Mr. Vishnai for Plaintiff to re-certify previous false claims made by the defendants and to further file false compliance claims with aerospace and DoD sites. But defendants did not take any action to rectify the situation or protect Plaintiff and ignore all plaintiff's complaints and concerns.

75. On or around October 2021, Plaintiff communicated via email and informed CTO Mr. Malcolm Humphrey and HR Director & CFO Brian Lambert about the previous false claims made by PLX Inc., and Plaintiff's discussions and complaint with Mr. Vishnai. Plaintiff also informed them about the intimidation by Mr. Vishnai against Plaintiff, requiring plaintiff to recertify previous false claims filed by the defendants and orders to file additional false claims on Defendants' behalf falsely claiming that PLX Inc. was now 100% NIST compliant, for Defendants to further procure and re-procure purchase orders from aerospace industry including but not limited to from LMC, Boeing and other companies that were controlled and regulated by DoD regulations.

76. As CTO and investor partner, Mr. Malcolm Humphrey also failed to take any action to rectify the situation. He did not take any action to rectify the violations caused by previous false claims by them nor did Mr. Humphrey protect Plaintiff from Itai Vishnai's illicit demands or stop Mr. Itai Vishnai from harassing Plaintiff to further file more false claims on Defendants' behalf. Mr. Humprey was also advised that he being a citizen of UK, should be extra careful with his/PLXInc.'s dealings with US aerospace industry and DoD.

77. On or about October 2021 Plaintiff became aware of a communication that Mr. Vishnai had with his friend Kevin at a dinner on or about the day Plaintiff further complained and raised concerns on previously filed false claims by them, where Mr. Vishnai and Kevin planned to harm Plaintiff inter alia by reprimanding Plaintiff for raising such complaints and concerns on previously filed false claims by Kevin and the Defendants.

78. Next day Plaintiff was again repeatedly ordered and further intimidated by Mr. Vishnai once again and was ordered to log into secured aerospace industry sites to re-certify previous false claims and further file false claims certifying that PLX Inc. was now 100% fully NIST compliant. Plaintiff was further told to file the false claims immediately on the secured aerospace sites as it was holding PLX Inc's orders worth millions and was holding up PLX Inc. from procuring and re-procuring further orders.

79. Plaintiff refused again and also informed Mr. Vishnai that Plaintiff was not even in a position to certify and or re-certify or file any claims as Plaintiff did not have admin access to the aerospace/DoD controlled and regulated secured sites. Plaintiff informed Mr. Vishnai that he Mr. Vishnai himself did have admin access to the sites and can file whatever certifications, recertifications and or claim there himself.

80. But amazingly Mr. Vishnai insisted and ordered Plaintiff to use false user names and IDs to log into DoD regulated secured aerospace sites and file the false claims and certifications immediately. Plaintiff was told that as the IT engineer it was Plaintiff's job to file such claims.

81. On or around November 2, 2021 Global supply Manager from Lockheed Martin once again informed Mr. Vishnai to the effect that purchase orders cannot be given to PLX Inc. as its profile shows that PLX Inc was only 90% compliant as was previously filed by PLX Inc. and thus it shows that PLX Inc. was not 100% NIST compliant. Since the orders include covered Defense information on drawings and parts, it required vendors, contractors, sub-contractors to be fully 100% NIST compliant to procure such order.

82. On or around November 3, 2021 Mr. Vishnai once again knowingly and deliberately made false claims in an email communication with aerospace industry/Lockheed Martin global manager Ms. Rebecca where Mr. Vishnai once again falsely claimed that PLX Inc. was now 100%fully NIST compliant.

83. Mr. Vishnai did this with intent to procure order worth millions which Lockheed Martin informed that it was holding back as it required in writing re-certification of previous claims of PLX Inc. being 90% NIST compliant and further certification that PLX Inc. was now 100% fully NIST compliant, as the

order included CDI (covered defense information) which under DoD regulations required 100% NIST security compliance by federal/defense related vendors, contractors and sub-contractors.

84. Plaintiff became alarmed as he became aware that Mr. Vishnai was making such false claims with intent of intimidating and forcing Plaintiff to falsely re-certify and certify that PLX was now 100% NIST compliant. Plaintiff also got alarmed as the defendants were repeatedly making such false claims against Plaintiff's advice with Lockheed Martin, to procure defense related order(s), with intent to intimidate coerce and force Plaintiff as the IT engineer of PLX Inc to forge documents and file false claims on their behalf on the federal aerospace and DoD site, thereby using Plaintiff as a front on their behalf to endorse their previously filed false claims and to file additional false claims.

85. Plaintiff got alarmed because Mr. Vishnai forwarded the communication to Plaintiff that he had with Lockheed Martin where he had once again made false claims in writing claiming PLX Inc was 100% NIST compliant, against Plaintiff's advice. Mr. Vishnai then once again ordered Plaintiff to take care of it immediately and certify and additionally file false claims at the aerospace and DoD site at Exostar.

86. On or around November 3, 2021, Plaintiff once responded with an email to Mr. Vishnai advising him to stop making such false claims of PLX Inc being NIST compliant, as PLX Inc. was not even 10% fully NIST compliant. In his email to Mr. Vishnai, dated on or around November 3, 2021 Plaintiff stated:

"Itai, it is advisable to stop /avoid claiming to LMCO that we are "actually NIST compliant", especially to stop/avoid claiming such in writing, because we are not NIST compliant. We are aiming to be compliant. As I previously brought to your attention 80% claims made by Kevin previously in the questionnaire are false. We need to rectify those first."

"Such repeated claims by you of PLX being "actually NIST compliant", especially in writing might come to bite PLX if LMCO and or DoD ever decides to audit PLX."

87. But Mr. Vishnai did not stop there and began harassing and intimidating Plaintiff by fabricating and nit picking on non-existing issues with Plaintiff's work at PLX Inc., and further attempted to intimidate and coerce Plaintiff to file false claims on aerospace and DoD site, making false claims of PLX being 100% NIST compliant, using such harassment. Mr. Vishnai became agitated with Plaintiff stating that if Plaintiff will not certify and file the compliance claims immediately, PLX will lose order worth millions and that would not be good for Plaintiff job.

88. After that Mr. Vishnai began harassing, intimidating and coercing Plaintiff via cell phone calls that he made Plaintiff call him back repeatedly and insisted that Plaintiff log on to the aerospace and DoD site Exostar under false ID of other current and ex-employee(s) and recertify previous false claims made by PLX Inc, and demanded that Plaintiff further file additional false claims further certifying that PLX Inc was fully 100% NIST compliant.

89. Plaintiff once again refused to do so stating the fact that it was illegal to do so and might even be considered criminal

90. Plaintiff once again informed Mr. Vishnai that since Plaintiff does not even have the admin rights on the aerospace sites he cannot file any such claims on defendants' behalf. Plaintiff further informed Mr. Vishnai that Mr. Vishnai himself and also Kevin his friend previous IT director for some reason (in violation) still have admin rights on the site and thus Mr. Vishnai should file any such claims himself on the site as he has the rights or could ask his friend Kevin once again to file whatever claims they wanted filed, as they did previously.

91. But Mr. Vishnai did not stop there and began further harassing Plaintiff on cell phone calls again where he kept demanding that Plaintiff call him (Mr. Vishnai) on cell phone. On phone calls Mr. Vishnai persistently intimidated Plaintiff and attempted to coerce Plaintiff now demanding that Plaintiff log on to aerospace /DoD site Exostar under Kevin's name and file false claims. Plaintiff refused again stating that PLX is not NIST compliant and that Plaintiff will not log under false IDs and in fact cannot log in under Kevin's name as a code is generated to Kevin on his phone. Plaintiff once again requested Mr. Vishnai to ask Kevin to log in and re-certify and additionally file the false claims that Mr. Vishnai still wanted filed.

92. Mr. Vishnai then harassed and intimidated Plaintiff to log onto the site with some other other employee user name or under another ex-employee's name and file false claims of compliance. When Plaintiff refused again, Plaintiff was told to do that as a favor for Mr. Vishnai. But Plaintiff still refused and repeatedly asked Mr. Vishnai to do it himself as he had the admin rights to file such claims.

93. Plaintiff informed Mr. Vishnai again and again that PLX Inc was not NIST compliant and that Plaintiff will not be able to certify any such thing as Plaintiff believed it might be considered a federal crime.

94. On or round November 3, 2021 Mr. Vishnai then hired a secretary Ms. Roxana under him and began harassing Plaintiff thru that secretary, to file the false claims on aerospace and DoD site Exostar under false ID and or under some other employee user name.

95. Between around November 3-5, 2021, Plaintiff was harassed, intimidated, coerced, and threatened continuously and persistently by Mr. Vishnai and then through the new secretary Ms. Roxana who kept demanding that filing such compliance claims is Plaintiff's job as IT Engineer and thus Plaintiff will have to file such claims as ordered by Mr. Vishnai.

96. Between around November 4-5 Ms. Roxana followed Plaintiff on the company floor all day and kept demanding that Plaintiff log onto Aerospace site under different user's name and file such false claims for Mr. Vishnai, claiming PLX was fully NIST compliant. Plaintiff was threatened that it was his job to do as asked and being the IT engineer it was his job to re- certify, certify and or file such claims with the aerospace industry on behalf of the Defendants' as required of Plaintiff by Mr. Vishnai, or it might affect Plaintiff's job at PLX Inc.

97. On Plaintiff's refusal Ms. Roxana threatened that Plaintiff might have to look for another job if he will not file the claims as required by Mr. Vishnai.

98. On or around November 5, 2021 Plaintiff reported about Mr. Vishnai and Ms. Roxana and the related harassment, intimidation and coercion and the threats to HR Director Mr. Lambert.

99. Severe emotional stress was inflicted upon Plaintiff by Itai Vishnai/defendants and by Ms. Roxana on Mr. Vishnai's behalf Roxana who kept following Plaintiff and ordering and insisting that Plaintiff had to file the false claims under false ID's claiming PLX Inc was 100% NIST compliant on the aerospace and DoD site Exostar, as it was Plaintiff's job requirements.

100. On or around November 8, 2021 Plaintiff once again filed another complaint with Mr. Vishnai, Mr. Humphrey with copies to the HR Director and to the Chairman of the board of directors of PLX Inc. and resigned from the job due to continuous, harassment, intimidation, threats by the Defendants requiring Plaintiff to perform illegal work for the Defendants.

101. In the complaint to them:
   a. Plaintiff stated:
   "Since I brought to your notice and attention that the NIST compliance questionnaire previously updated and submitted by PLX/Kevin to Exostar/LMCO/DoD stating that PLX is 90% NIST compliant is false. I believe, you are now getting out of control in your, unjustified aggressive bullying, all in retaliation against me, and have now made a new hire Roxana, who has joined PLX 2 days ago and has no clue what she is doing or ordering IT/Me to do, on your behalf, complicit in your such retaliatory behavior also."

   b. Plaintiff stated:
   "When I requested and was provided by you a copy of previously filed SSP/NIST questionnaire document, I found out that the SSP/NIST questionnaire submitted previously for PLX by previous IT Director Kevin (your friend) under your esteemed guidance, wherein it was claimed that PLX is 90% NIST compliant, **was false**. I found that 80-90% claims made by Kevin in previously filed SSP/NIST questionnaire, claiming that PLX was 90% NIST compliant, **were totally false**. The reality was that PLX was just about 10% NIST compliant but you had knowingly falsely claimed PLX being 90% compliant by knowingly making numerous false claims in the previously submitted NIST questionnaire/SSP with intent to increase PLX scoring to 89-90 on LMCO/DoD sites to obtain undue orders from LMCO/Boeing/DoD etc. based on such false scoring. And this I brought to your attention and to our CTO's Malcolm's attention and Brian's accounting/HR attention immediately. See attached Doc1, 1a, 1b attached herewith, that were sent to your friend Kevin, CTO, Malcolm Humphrey and HR Manager Brian Lambert."

   "it was here, that I discovered that you did file SSP NIST compliance questionnaire document with exostar, LMCO and DoD previously, where your former IT Director Kevin (your friend), with your knowledge and under your guidance, had knowingly falsely stated and claimed with LMCO/DoD that PLX is 90% NIST compliant. At the time such document was filed, I believe, you and Kevin both were fully aware of the fact that statements and or claims made and or that were being made in that previously filed SSP/NIST questionnaire document were false. At the time that document was filed both your friend Kevin and you

were fully aware of the fact that PLX was no- where near 90% NIST compliant, in reality PLX was just about 10% NIST compliant and was not 90% compliant, as was knowingly falsely claimed in that previously filed SSP/NIST questionnaire document by Kevin. But you concealed this from me."

After discussing this with you, I was stunned to find that the above was all done by Kevin with your knowledge, support and under your guidance for your own financial gains at the expense of risking permanent damage to PLX, to illicitly obtain undue orders from LMCO/Boeing/DoD under such false pretenses."

c.   In his complaint Plaintiff further stated:
"And even after I had immediately brought to your notice and attention about this very serious matter that had come to light in or around October 2021, rather than rectifying the previously filed document with false claims and then following the correct path to NIST compliance and CMMC certification, I found you refused to correct the false claims on LMCO/DoD site, and in fact ordered me to endorse such previously filed false claims. Instead of showing concern or remorse, you excitedly communicated to me that that I should contact your friend Kevin. You claimed to me that your friend Kevin is a master of getting PLX scores high for you, and these are your words to me, "Kevin played around with various questions providing various answers on that SSP/NIST questionnaire previously, and then kept testing scores. He was getting 30-40, initially but then after manipulating the answers he got 60, then 70 then 80 and then 89-90". I was amazed when told by you that its ok to falsely claim that PLX is 100% NIST compliant, even if PLX is not NIST compliant yet."

"Per your orders, I did contact your friend Kevin the ex-IT Director of PLX and sent him a detailed email as to what has happened and requested help from him for a solution. This communication to your friend was also copied to CTO Malcom and HR manager Brian. See Doc1, 1a, 1b attached herewith. But even our CTO Malcolm did not show any serious concern on such serious matter or took any action to rectify the previously filed document with false claims. Malcolm needs to be very careful as he is a British citizen aiming for a USA green card, who has probably now become complicit with you in fooling around with USA DoD, with such false filings that he also did not and still does not care to rectify or address seriously. Malcolm needs to understand the responsibilities and liabilities that comes with his position of CTO, especially when dealing with USA DoD and more so as a British citizen. It was his job also to report the false filings and rectify that previously filed document with containing false claims, even if you refused to."

d.   In his complaint Plaintiff further stated:
"I was stunned to find that rather than taking my report on false filings by PLX seriously, you manipulatively cooked up stories behind my back, at a dinner later around that day with your friend Kevin where instead of questioning him, you made plans to harm me, and directed your friend Kevin to reprimand me on information and help that I sought from him. Which I had done on your own orders. You also directed your friend as to how he should respond to my factful email asking him for help, and also told your friend Kevin what his

14

reply/response to me, should be. See Doc2 attached herewith, it shows you fooling around with Kevin and your covert planning to reprimand me for bringing such serious matter to your highness's attention."

"As if your such immature irresponsible and manipulative behavior and such response from Kevin once again under your manipulative guidance, would have or will change the facts that you both had knowingly and collaboratively filed false claims with LMCO/DoD with intent to obtain undue orders from them, and did obtain orders, and are still obtaining undue orders from them under false pretenses. And still planned to file additional false claims to once again falsely claim that PLX is now 100% NIST-compliant."

"Amazing! instead of reprimanding Kevin, who had been charging you some $200/hr, for leading PLX in a hole, I was stunned to find out that you were once again manipulating everyone. You went behind my back and told Kevin to reprimand me, ME? for the deep hole that Kevin and you yourself dug up under your own esteemed guidance, for PLX with such false LMCO/DoD filings? And here I have been working my butt off for you to find a way to get all this corrected properly and still keep you in business and on the path for NIST compliance and CMMC certification. I had advised you to correct your previous filing with LMCO/DoD even though it would bring your scores down with LMCO/DoD, but as usual you refused stating you know better, you were more interested in million-dollar orders from LMCO and stated that it does not matter if we claim that we are 100% NIST compliant as long as we are aiming to be. Wow! Itai, as a CEO, you should know better and probably as a CEO you are required by law to know better."

e.   In his complaint Plaintiff further stated:
"Shame on you Itai Vishnia for being a CEO who still just cannot comprehend or understand the seriousness of your own improper illicit actions of knowingly filing false claims with LMCO/DoD with intent to obtain undue orders from them under such false pretenses. And do you understand that you actually executed your illicit intent and possibly converted your illicit intent to a possible federal fraud/crime, when you executed your illicit intent and made it a reality, when you actually did obtain and are still obtaining undue orders from LMCO/DoD on the basis of your false filing, claims and or under false pretenses. And now you might have committed additional fraud and possible additional federal crime by knowingly falsely repeatedly claiming to LMCO/DoD that you/PLX is "actually 100% NIST compliant", even after I, advising you not to claim such. You might now have knowingly furthered your fraud and possibly a federal crime by knowingly endorsing previous false filings and or updating such false claims with additional lies and false claims, to falsely show that PLX is now 100% "actually NIST compliant".

"Now rather than you yourself understanding the actual seriousness of the actual urgent matters and the actual urgency of properly dealing with such actual serious urgent matters concerning your own false filings with LMCO/DoD, and instead of correcting your false filings immediately, you tried to force me to impersonate other users to log into Exostar/LMCO/Dod sites and endorse your previous false filings and file additional false claims

for you with them to falsely show them  that PLX is now 100% NIST compliant. You then attempted to insult me and have your two-day  old hire assistant to force me to do the same for her/you. And since I refused to impersonate and  do any illegal work for you concerning LMCO/DoD, and since I refused to do your dirty illicit work  and refused to endorse your previously filed false filings and refused to further file additional  false claims on DoD sites for you, you have started further aggressively retaliating against me  more for refusing your illicit orders."

"But you went beyond all this now when you first started retaliating against me and harassing me  the very minute, I brought to your attention that Kevin has submitted multiple contradicting SSP  NIST questionnaire documents with different entities knowingly making false claims in them for  you, with you and under your support and guidance where you were paying him nearly $200/hr  to do this for you. But Kevin knew better. He filed such LMCO/DoD related documents with false  statements/claims for you and then walked away from the job, leaving for me to take care of  huge mess at PLX."

f.   In his complaint Plaintiff further stated:
"I was still working on problems for you diligently every single day, trying to also coach you to  rectify your serious and egregious false filings with LMCO/Dod, and to do things the right way. But  instead of rectifying anything you chose to retaliate against me, and on Wednesday Nov. 3, 2021,  you crossed all boundaries and the red line that I do not allow anyone to cross in my life."

"Even after apprising you with evidence, numerous times that the claims of PLX being 90% NIST  compliant made in SSP/NIST questionnaire document previously filed by Kevin/you with exostar,  LMCO, DoD are false, on Wednesday you attempted once again, and this time boldly, arrogantly and defiantly to coerce, intimidate, induce and force me to  endorse and update  that false  document for you on exostar system at LMCO and DoD sites, with more false claims and ordered  me to falsely claim with LMCO/DoD that PLX is now 100% NIST compliant. And when I refused  stating to you that I will not be able to do such illicit work as PLX is not NIST compliant, you stated I should do it anyway, for you. Wow! this is our CEO who fails to understand that he is dealing  and or in fact is knowingly fooling around with US DoD."

"You further manipulated information, coerced, and intimidated me and attempted to force me  to impersonate another user to log into LMCO/Dod sites and file false claims and filings with  LMCO/DoD under that user's log ins, even after I communicated to you clearly that it is advisable  that you stop claiming and repeatedly claiming with LMCO/DoD that PLX is "actually NIST  Compliant" because PLX is not NIST compliant, in fact you are fully aware that PLX is nowhere  near NIST compliant. But you continued claiming it. And then wanted me to endorse your and Kevin's lies and file additional lies to falsely justify and back your false claims that PLX is now "actually 100% NIST compliant". Wow! this is our CEO who fails to understand that he is dealing  and or in fact is knowingly fooling around with US federal government and possibly DHS."

"And when I refused stating that I don't have the admin rights to update anything on Exostar/LMCO/DoD site, and that you have the admin rights yourself and thus you should update it yourself and should endorse it yourself under your own login if you want to or ask your friend Kevin to do it, who for some unknown reasons still has admin rights to Exostar/LMCO/DoD sites. I told you that I will not endorse the previous filings by you and in fact I actually don't even have any update for previously filed SSP questionnaire document either, because PLX is not NIST compliant as of this day, but you still tried to further coerce, intimidate, induce and force me with an order to impersonate users, to use some other user's, either Kevin's, Jenny's or Mariella's log ins to log into LMCO/Dod site and update the SSP/NIST questionnaire document with more false information under their log ins, and further ordered me to falsely claim with LMCO/DoD that PLX is now 100% NIST Compliant. Which I again refused to do and asked you to do it yourself."

"After which you have started to further retaliate, harass, bully, insult me. And when you believed writing was not legal or proper, you attempted to achieve your illicit orders thru some self-serving intimidating phone calls to me all day on Wednesday, ordering me to log in under another user's name and endorse and update the previously filed false document to show that PLX is now 100% NIST compliant."

g.   In his complaint Plaintiff further stated:
"You also made a new hire Roxana your assistant complicit in your illicit orders, to be given to me. You got your assistant Roxana who just joined PLX a day ago to become complicit in your retaliatory behavior, who started questioning me on my IT work, timelines, and then tried to intimidate and force me to file that SSP/NIST questionnaire document on LMCO/DoD site, claiming it is all IT related work and that as the IT person in PLX I will have to do it."

"A two-day old IT/security/compliance illiterate employee Roxana, who has no clue of what she is talking about, has no clue what is IT, what is my position, what work I do in PLX, began harassing me and insisting with me that it is IT work and I have to do it, and attempted to force me to update the SSP/NIST questionnaire on LMCO/Dod sites. Amazingly Roxana also ordered me to log into LMCO/DoD site by impersonating an ex-employee Jenny, and ordered me to endorse previously filed false claims and add more false claims to the NIST questionnaire document on LMCO/DoD site and claim that PLX is 100% NIST compliant, with LMCO/DoD. Wow! what an executive assistant you have hired, who on her 2nd day at PLX believes can order me an IT Engineer/Director/administrator to do illegal work at PLX."

"Wow! all I can say is Wow! Itai, good going with an incompetent IT/security/compliance illiterate new hire employee who, to impress you, has joined you in pushing PLX on the brink of pending disaster on her very 2nd day of work at PLX, without understanding the consequences, repercussions and or collateral damage she is causing to PLX with her actions, all under your esteemed advice and guidance to force me to do illegal work for

you/her. And amazingly she also  very proudly, arrogantly, and defiantly ordered me to impersonate an ex-employee to do your  such illegal work. I believe your IT, security and compliance illiterate 2 days old new hire executive  assistant, now believes she is the CEO and has the power to order and can order an IT  Engineer/Director to do illegal work for you and file false documents and make false claims with LMCO/DoD and that also by impersonating other employees and even ex-employees. Wow! am I  working in the USA or a third world corrupt country? All this is mind boggling to me."

"And here, since I joined PLX, I have been working hard to protect your office and PLX from  disasters, and mess that PLX is in, but you then manipulatively go behind my back and plan harm  against me and go and tell your friend Kevin that he should reprimand me for confronting him  with facts and his illicit claims that could bring this company PLX to its knees and probably wipe  out PLX's existence, if audited by LMCO and or DoD? Which I believe Kevin knew, and that is why  he walked away from PLX after filing such false documents for you, I believe Kevin also filed such  false claims under your advice, coercion and or intimidation or in friendship. And now instead of  showing concern or remorse, you excitedly communicate to me that Kevin is a master of getting  PLX scores high for you, and these are your words to me, "Kevin played around with various  questions providing various answers on that SSP questionnaire, and then tested scores. He was  getting 30-40, then after manipulating the answers he got 60, then 70 then 80 and then 89, for  which score you both settled and agreed upon" probably thought it to be a good idea to falsely  claim that PLX was 90% NIST-compliant. But now your false fillings and your repeated false claims  with LMCO/DoD have come back to bite you, but you still don't grasp the gravity of your irresponsible  behavior and your illicit actions and filings."

h.     In his complaint Plaintiff further stated:
"I was stunned to find that at all such times when false filings were being filed with LMCO/DoD,  you both were fully aware that the reverse was the truth. You both were aware that PLX was just  about 10% NIST compliant and about 90% non-compliant. I was stunned to find that at all times  you as the CEO were fully aware and had full knowledge of the fact that you were filing false  claims with LMCO/DoD, but you still did it with intent to push your scores up and obtain undue  orders from them under such false pretenses, by falsely claiming that you are NIST compliant."

"Mr. Itai Vishnia, your false filings have now come back to bite you, when now LMCO/DoD wants  you to endorse previous filings and update the rest of the 10% deficiency that you falsely showed.  But you and your friend Kevin both thought that if such false claims get you such high scores, and  such high scores get you DoD relevant orders from LMCO, Boeing and others, it is definitely a very  good idea to knowingly lie and make false claims to LMCO and DoD, as long as it generates orders  and revenue for you, PLX and its investors. And as long as your work impresses your investors?"

"And now when your false filings came back to bite you, you wanted me to endorse your previously filed false claims and add additional 10% false claims and falsely claim for

you with  LMCO/DoD that PLX is now 100% NIST compliant and you wanted this done by me impersonating  other employees and using their log ins."

"Both of you still failing to understand the gravity of you faults and still running from the truth,  you fail to understand the pending doom that you have caused for PLX with your intentional false  statements that you both have collaboratively made to LMCO and DoD to fraudulently bump up  your scores to 89-90. And now instead of showing some remorse I find you both fooling around  behind my back having dinners and making plans with Kevin to harm me and have Kevin reprimand me, ME? You Itai, planning to harm and reprimand me and retaliating against me, ME?  Me, who wants to get PLX on right path safely, who offered to get PLX on right path properly and  who was working his butt off to get PLX on the right path properly?"

i.    In his complaint Plaintiff further stated:
"Mr. Itai Vishnia, do you really have the comprehending capacity to comprehend the gravity of the situation and the position you both have put PLX and yourself in? And you still want to dig that hole deeper by attempting to force me not only to endorse your previous lies but also knowingly add additional lies and falsely claim with LMCO and DoD that we/PLX is now actually  100% NIST-compliant, after knowing and being apprised by me numerous times that PLX is not  NIST-compliant nor is it anywhere close to being 100% NIST-Compliant and that you should  stop/avoid claiming such."

"As a CEO, do you really have the comprehending capacity to comprehend that your knowingly arrogant false claims can bring PLX to its knees now, as it could possibly be considered a federal  fraud and or possible crime, that could be applied retroactively."

"Mr. Itai Vishnia, do you have the capacity to understand the legal consequences, repercussions, and collateral damage of your illicit actions? It can wipe out PLX from existence, if audited by  LMCO/DoD. Are you able to comprehend that you as the CEO and Kevin as your IT Director (your  great friend) might have committed a chargeable serious fraud/criminal offence against DoD and  possibly against DHS, by intentionally fabricating and filing false claims with LMCO and DoD, with  malicious intent to obtain undue orders from them. And which you did just for your personal  financial gains and interests. Because you did this not just with an intent to illicitly obtain orders  from DoD and or related companies like LMCO/Boeing etc. under false pretenses, **you actually  executed your illicit intent and did go ahead and obtain undue orders from them and are still  obtaining such undue orders from them, under false pretense and based on you your  intentional false filings and based upon the false scores you manipulated to score based on  such false filings. And amazingly you still are continuing to file false claims and now also used  coercion and intimidation to force your employee/me to file false claims for you. And stunningly you Mr. Itai Vishnia, wanted your employee/me to further illicitly impersonate  other employees to further file false claims with LMCO/DoD."**

j.    In his complaint Plaintiff further stated:

"Mr. Itai Vishnia, do you understand that the way DoD and DHS might look at this is that, you have made money and have profited from LMCO/DoD contracts by willfully filing false claims of being NIST compliant when PLX was not, thereby not only risking PLX but also risking DoD and possibly risking DHS. This could be considered a chargeable criminal offence not only against PLX but against you and your friend Kevin both in your professional and personal capacities. And PLX, you and Kevin could possibly be blacklisted permanently from any federal and State related work, orders, contracts."

"this is DoD you are dealing with, it is a serious FEDERAL AFFAIR, and you might have already probably violated laws and or committed a federal fraud/crime, when you first knowingly submitted false claims of NIST compliance, and have now aggravated the matter more by retaliating and now attempting to involve me to further your dirty work by attempting to order, coerce, induce and or intimidate me not only to file additional false claims but also to endorse the previous false claims that you and your friend Kevin filed. And now have further made matters worse by retaliating against me and making a two-day old employee Roxana complicit in it too, who along with you kept ordering me on Wednesday Nov. 3rd, that since it is IT related questionnaire and work, I will have to update the questionnaire per Itai's orders and complete it by end of the day. Like you she/Roxana also ordered me to impersonate myself as another user, an ex-employee Jenny and log into LMCO and DoD site as Jenny and to endorse the previous false filings and update the SSP/NIST document to falsely show that PLX is now 100% NIST compliant."

"And you both are making matters much worse by now retaliating more against me and further aggravating the hostile environment you have already created for me, after I sincerely advised about the false filings, after I advised you to stop claiming with LMCO/DoD that PLX is "actually NIST compliant". And after I refused to file false claims with LMCO/Dod for you both."
"I feel so sorry for you, that you have already lost many very good employees due to your own possibly improper behavior. But now you have crossed all boundaries with me in retaliation against me for bringing to your attention your own illicit filings, and for refusing to be complicit in your dirty illegal work and for refusing to file false filings with LMCO/DoD, for you."

102. It should be noted that at all relevant times the Defendants were fully aware of and had full knowledge of the facts that they had previously file false claims and certifications of PLX Inc. being NIST compliant but were still went ahead and harassed Plaintiff to endorse their previously filed false claims and to further file additional false claims that PLX Inc was 100% NIST compliant.

103. It should be noted that at all relevant times the Defendants were fully aware of and had full knowledge of the facts that they were ordering, forcing, intimidating and coercing Plaintiff to endorse their previous filings of false claims of security compliance and were ordering, forcing,

intimidating and coercing Plaintiff to file additional false claims of PLX Inc being 100% NIST compliant knowing very well that PLX Inc. was not/never NIST compliant.

104. Defendants harassed, attempted, intimidated and coerced Plaintiff to forge documents on false pretenses and attempted to force Plaintiff to falsely certify that PLX Inc. was 100% NIST security compliant and was harassed intimidated, coerced and threatened, to file such false certifications on aerospace and DoD site, using false user name and ID, on behalf of the defendants. Defendants attempted to force Plaintiff to forge and file such documents with false claims of security compliance with intent to deceive the Aerospace industry, LMCO, DoD so that inter alia defendants could obtain/procure defense related purchase orders worth millions under false pretenses from LMCO (Lockheed Martin) and other Aerospace agencies. Defendants also wanted Plaintiff to forge and file such false information and certifications and re-certification of NIST and CMMC security compliance making false claims that PLX Inc. was 100% such security compliant, on federally controlled aerospace sites including on Exostar and with DoD so that defendants could retain and re-procure the previous purchase orders obtained/procured by them under such previously made fraudulent misrepresentation and false claims by them.

105. Plaintiff realized and got alarmed that Defendants were using Plaintiff as a front for their illicit activities.

106. Plaintiff got alarmed and concerned that he may be charged with fraud and or crime by the federal government regulatory agencies if he remains in the job.

107. Due to the persistent demands to perform illegal work for defendants and the hostile environment created by the defendants for Plaintiff complaining and refusing to perform any illegal work for the defendants, and due to the alarm and concern that he may be charged with fraud and or crime by the federal government regulatory agencies if he remains in the job, Plaintiff was forced to resign on or around November 8, 2021 as he was left with no other choice and was given no other option but to resign from PLX Inc. See EXHIBIT 1 (Plaintiff's Resignation notice dated November 8, 2021)

108. Defendants were requested to pay for the over time that Defendants made Plaintiff work, but as of this day defendants have refused to do so as of this day.

109. Defendants were given appropriate opportunity and time to truthfully correct their filings with various vendors and authorities, and were requested and given opportunity to voluntarily file correct and proper documents with Lockheed Martin, Boeing etc, and with DoD about their being non-compliant under NIST and CMMC, but have refused to truthfully file and or correct their illicit actions and activities truthfully as of this day.

110. Plaintiff believes defendants' refusal to correct their illicit actions is also a cause for further concern due to possible damages done and or ongoing and persistent repercussions on national security due to defendants' refusal to inform the vendors and DoD about their false filings.

**FLSA and NYLL Factual Allegations**

111. Consistent with their policies and patterns or practices as described herein, Defendants intentionally also harmed Plaintiff, individually, as follows:

112. Plaintiff was employed by PLX INC., as IT Engineer (Information Technology Engineer) from on or around August 2, 2021 through on or around November 8, 2021.

113. Plaintiff was tasked with control of user IT systems and network related applications, data, and information security access, desktop and user support, maintenance, setup, troubleshooting, repair, computer cleaning, revamping, recycling, resetting, removing malicious viruses, spywares, malwares, backup and archive, making them available for use and re-use for PLX INC. users. Plaintiff's primary duties and responsibilities involved providing PLX INC.'s staff/users with technical desktop support, ensuring that their computers could connect to the company's network and servers and to make sure their computers were working properly in their cubicles with each user having appropriate user access to IT systems, network, data and information.

114. Plaintiff did not manage anyone and Plaintiff's primary duties did not include exercise of discretion and or independent judgment with respect to any matters of significance to management or general business operations of the employer.

115. During his employment, Plaintiff generally worked over 40 hours per week, unless he missed time for vacation, sick days, or holidays.

116. In that regard, Plaintiff worked approximately 5 days per week, 8 a.m. through 5 p.m.

117. In addition, Plaintiff was often required to work after 5:00 p.m. or to begin his work day before 8:00 a.m. and also work late nights and on weekends and remotely nearly 24/7.

118. Plaintiff was not allowed his entitled 1:30 hours for lunch, nor was he allowed any breaks, but instead was required to also work during his lunch time and made to work during lunch time also.

119. Plaintiff was put on call 24/7 and was made to work nearly 24/7 without OT and or compensation, while other employees were paid OT and compensation for working OT and on call.

120. Despite being a non-exempt employee, Defendants failed to properly pay Plaintiff overtime compensation at 1.5 times his regular rate of pay when he worked over 40 hours per week.

121. In that regard, Plaintiff received a set salary, payable weekly, regardless of the number of hours he worked each week.

122. Moreover, Defendants provided Plaintiff with paystubs that failed to reflect his actual hours worked and did not keep track of the number of hours worked by Plaintiff each day and week.

123. Despite regularly working over 40 hours per workweek, Defendants failed to compensate Plaintiff with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work.

124. Through his employment, Plaintiff received weekly pay stubs from Defendants that did not record and/or compensate him for all of the hours that he worked.

125. Defendants failed to provide Plaintiff with proper wage notices as required by the NYLL.

126. Defendants failed to provide Plaintiff with accurate wage statements as required by the NYLL and failed to maintain proper work and wage records.

**FIRST CAUSE OF ACTION**
**False Claims Act – Retaliation and Constructive Discharge**
**against all Defendants**

127. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

128. Plaintiff believes and alleges thereon that Defendants violated Section 3730(h) of the False Claims Act, 31 U.S.C. 3730(h) when they retaliated against Plaintiff for Plaintiff reporting violations of rules laws and regulations, and for Plaintiff refusing to perform illegal work for Defendants as detailed herein above in this entire complaint.

129. Defendants were not NIST and CMMC compliant as was required by the aerospace industry, Lockheed Martin, Boeing and federal agencies including DoD for Defendants to procure any defense related CDI contracts, purchase orders from the aerospace agencies including but not limited to from LMCO.

130. Defendants falsified security documents, manipulated documents whereby they intentionally fraudulently misrepresented, concealed and omitted disclosures of their nearly nonexistent NIST and security compliance. Defendants intentionally manipulated documents and falsely claimed with the aerospace agencies, including but not limited to LMCO etc. and with DoD that they were fully NIST and CMMC compliant to procure and re-procure defense related orders worth millions.

131. Defendants then required Plaintiff as the IT Engineer to log into federally regulated aerospace websites like Exostar and file false certifications claiming PLX Inc was fully NIST CMMC compliant. Defendants also required Plaintiff to endorse defendants' previously filed false claims, and additionally file more false claims of PLX Inc being 100% NIST compliant, with the aerospace industry including but not limited to with LMCO, Boeing and with DoD.

132. Plaintiff refused to do so as Plaintiff believed in good faith that it was illegal to do so and that Defendants were intentionally violating rules laws and regulations for procuring undue defense related orders thereby promoting their own financial interests and gains by violating rules laws and regulations and at the expense of seriously jeopardizing national security. Plaintiff believed in good faith that Defendants actions were illegal and could be considered criminal. Plaintiff reported the violations to his supervisors the defendants, who also were the CEO and CTO of PLX Inc. But the defendants willfully failed to rectify the violations and instead retaliated against Plaintiff for reporting the violations and refusing to perform illegal work for Defendants.

133. On Plaintiff's complaint of harassment and intimidation and Plaintiff's refusal to perform any such illegal work for defendants and on Plaintiff's refusal to falsely re-certify previously filed false compliance claims by defendants and on Plaintiff's refusal to certify and file additional false defense related security compliance claims on behalf of defendants with aerospace agencies and DoD, Defendants intentionally and maliciously retaliated more against Plaintiff and harassed, intimidated and persisted to coerce and force Plaintiff to perform such illegal work for them and ordered Plaintiff to use false identity of other employees even ex-employees to log into federally controlled and regulated secured sites including Exostar and file false claims with aerospace agencies, including but not limited to with LMCO and also with DoD.

134. Plaintiff found himself in a hostile environment that was intentionally created by the defendants around Plaintiff due to Plaintiff reporting the violations and refusing to perform illegal work for the defendants. Plaintiff got alarmed and concerned that he may be charged with fraud and or crime by the federal government regulatory agencies including but not limited to by DoD, DHS and federally regulated aerospace agencies including but not limited to LMCO, Boeing etc. if he remains in the job.

135. Due to the persistent demands by the defendants for Plaintiff to perform illegal work for defendants, and Plaintiff refusing to perform any illegal work for the defendants and due to the hostile environment created by the defendants for Plaintiff reporting violations of rules, laws and regulations, and due to Plaintiff's concerns that he may be charged with fraud and or crime by the federal government regulatory agencies if he remains in the job, Plaintiff was forced to resign as he was left with no other choice and was given no other option but to resign from PLX Inc

136. Plaintiff believes and alleges thereon that he engaged in federal and State protected activity when he reported violations of rules, laws and regulations to his supervisors. Plaintiff engaged in federal and State protected activity when he refused to perform illegal work for the defendants. Defendants violated the laws by retaliating against Plaintiff for reporting violations and when they harassed, intimidated and attempted to coerce and force Plaintiff to perform illegal work for them requiring Plaintiff to forge/falsify security compliance documents, certify/endorse Defendant's previously made false claims of security compliance and file additional false claims of compliance with aerospace industry and DoD on behalf of Defendants. Defendants violated the laws by retaliating against Plaintiff, thereby intentionally causing Plaintiff's constructive discharge.

137. Plaintiff believes and alleges thereon that he was constructively discharged by the defendants in retaliation for voicing inter alia, concerns about rules, laws and regulatory

violations involving Defendant(s) which violations Plaintiff also believed in good faith to be criminal violations, and which voicing by Plaintiff was also mandated by PLX INC.'s own mandated policy. Plaintiff alleges That Defendants' retaliatory action against Plaintiff for Plaintiff engaging in federal and NY state protected activity and refusing to perform illegal work for defendants caused Plaintiff's constructive discharge.

138. At all relevant times, Defendants were fully aware and had full knowledge of the violations reported by Plaintiff and Plaintiff's refusal to falsify documents, claims and or perform any such illegal work for defendants, and that Plaintiff had engaged in conduct protected by the False Claims Act.

139. Plaintiff believes and alleges that at all relevant times False Claims Act, under section 31 U.S.C. 3729 et seq. (the "False Claims Act"), section 3730(h) of the False Claims Act, was in effect and binding upon defendants and that defendants willfully violated Section 3730(h) of the False Claims Act, 31 U.S.C. 3730 by retaliating against Plaintiff for reporting violations and refusing to perform illegal work for the defendants.

140. As a proximate result of Defendants' intentionally malicious collusive unlawful actions Plaintiff has also suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and  Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

141. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

142. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

143. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

### SECOND CAUSE OF ACTION
### Title 41 USC Section 4712 – Retaliation
### against all Defendants

144. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into

this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

145. Plaintiff believes and alleges thereon that Defendants violated Title 41 USC section 4712 when they retaliated against Plaintiff for Plaintiff reporting violations and for Plaintiff refusing to perform illegal work for Defendants as detailed herein above in this entire complaint.

146. Plaintiff believes and alleges thereon that he engaged in federal and State protected activity when he reported violations of rules, laws and regulations to his supervisors. Plaintiff engaged in federal and State protected activity when he refused to perform illegal work for the defendants. Defendants violated the laws by retaliating against Plaintiff for reporting violations and when they harassed, intimidated and attempted to coerce and force Plaintiff to perform illegal work for them requiring Plaintiff to forge/falsify security compliance documents, certify/endorse Defendant's previously made false claims of security compliance and file additional false claims of compliance with aerospace industry and DoD on behalf of Defendants. Defendants violated the laws by retaliating against Plaintiff, thereby intentionally causing Plaintiff's constructive discharge.

147. Plaintiff believes and alleges thereon that he was constructively discharged by the defendants in retaliation for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendant(s) which violations Plaintiff also believed in good faith to be criminal violations, and which voicing by Plaintiff was also mandated by PLX INC.'s own mandated policy. Plaintiff alleges that Defendants' retaliatory action against Plaintiff for Plaintiff engaging in federal and NY state protected activity and refusing to perform illegal work for defendants caused Plaintiff's constructive discharge.

148. At all relevant times, Defendants were fully aware and had full knowledge of the violations reported by Plaintiff and Plaintiff's refusal to falsify documents, claims and or perform any such illegal work for defendants, and that Plaintiff had engaged in conduct protected by the False Claims Act.

149. Plaintiff believes and alleges that at all relevant times Title 41 USC section 4712, was in effect and binding upon defendants and that defendants willfully violated Title 41 USC section 4712 by retaliating against Plaintiff for reporting violations and refusing to perform illegal work for the defendants, as detailed here in above in this entire complaint

150. As a proximate result of Defendants' intentionally malicious collusive unlawful actions Plaintiff has also suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

151. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

152. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

153. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

### THIRD CAUSE OF ACTION
### NYLL Section 215 – Retaliation
### Against all Defendants

154. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

155. Plaintiff believes and alleges thereon that Defendants violated NYLL Section 215 when they retaliated against Plaintiff for Plaintiff reporting violations and for Plaintiff refusing to perform illegal work for Defendants as detailed herein above in this entire complaint.

156. Plaintiff believes and alleges thereon that he engaged in federal and State protected activity when he reported violations of rules, laws and regulations to his supervisors. Plaintiff engaged in federal and State protected activity when he refused to perform illegal work for the defendants. Defendants violated the laws by retaliating against Plaintiff for reporting violations and when they harassed, intimidated and attempted to coerce and force Plaintiff to perform illegal work for them requiring Plaintiff to forge/falsify security compliance documents, certify/endorse Defendant's previously made false claims of security compliance and file additional false claims of compliance with aerospace industry and DoD on behalf of Defendants. Defendants violated the laws by retaliating against Plaintiff, thereby intentionally causing Plaintiff's constructive discharge.

157. Plaintiff believes and alleges thereon that he was constructively discharged by the defendants in retaliation for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendant(s) which violations Plaintiff also believed in good faith to be criminal violations, and which voicing by Plaintiff was also mandated by PLX INC.'s own mandated policy. Plaintiff alleges that Defendants' retaliatory action against Plaintiff for Plaintiff engaging in federal and NY state protected activity and refusing to perform illegal work for defendants caused Plaintiff's constructive discharge.

158. At all relevant times, Defendants were fully aware and had full knowledge of the violations reported by Plaintiff and Plaintiff's refusal to falsify documents, claims and or perform any such illegal work for defendants, and that Plaintiff had engaged in conduct protected by the False Claims Act.

159. Plaintiff believes and alleges that at all relevant times NYLL Section 215, was in effect and binding upon defendants and that defendants willfully violated NYLL Section 215 by retaliating against Plaintiff for reporting violations and refusing to perform illegal work for the defendants, as detailed here in above in this entire complaint

160. As a proximate result of Defendants' intentionally malicious collusive unlawful actions Plaintiff has also suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and  Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

161. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

162. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

163. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

**FOURTH CAUSE OF ACTION**
**Violation of Public Policy**
**against all Defendants**

164. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

165. Plaintiff believes and alleges that at all relevant times False Claims Act, 31 U.S.C. 3729 et seq. (the "False Claims Act"), section 3730(h) of the False Claims Act, was in effect and binding on Defendant PLX INC. and also on all other Defendants in their individual, professional and corporate capacity and as aiders and abettors in their controlling capacity in furtherance of such activity. This law prohibits

employers from discharging, constructively discharging, demoting, threatening harassing or in any manner discriminating or retaliating against any employee because he or she provided information, caused information to be provided, relating to, violations of law, rule, or regulation, fraudulent and or improper/illicit business practices, and or abuse of authority. The laws also prohibit employers to require employees to perform illegal work.  The laws also prohibit employers from retaliating against employees who refuse to perform illegal work.

166. Plaintiff believes and alleges that at all relevant times, Title 41 USC section 4712 against contractor/sub-contractor reprisal was in effect and binding on Defendant PLX Inc. and also on all other Defendants in their individual, professional and corporate capacity and as aiders and abettors in their controlling capacity in furtherance of such activity.

167. Plaintiff believes and alleges that at all relevant times, NYLL Section 215 against retaliation was also in effect and binding upon Defendant PLX Inc. and on all other Defendants as active aiders and abettors. The law makes it unlawful for an employer, or anyone on behalf of an employer, to discharge, penalize, or in any manner discriminate or retaliate against an employee for making a complaint about a possible labor law violation an or exercising any rights that are protected under labor laws.

168. Plaintiff believes and alleges that at all relevant times, FLSA, 29 U.S.C. 201 et seq., and its supporting regulations was in effect and binding on Defendant PLX Inc. and on all other Defendants as active aiders and abettors.

169. Plaintiff believes and alleges that at all relevant times, Article 19 of the NYLL and its supporting regulations was in effect and binding on Defendant PLX Inc. and on all other Defendants as active aiders and abettors.

170. Plaintiff believes and alleges that at all relevant times, NYLL, Article 6, 195(1) and its supporting regulations were in effect and binding on Defendant PLX Inc. and on all other Defendants as active aiders and abettors.

171. Plaintiff believes and alleges that at all relevant times, NYLL, Article 6, 195(3) and its supporting regulations was in effect and binding on Defendant PLX Inc. and on all other Defendants as active aiders and abettors.

172. Each of the aforesaid laws is a fundamental state and or federal law and thus public policy, that were intentionally violated by Defendants.

173. Plaintiff believes and thereon allege that his protected activity, refusing to become complicit, collude, conspire, participate in illegal activity and refusing to condone illegal activity, and further engaging in protected activity, was a motivating factor in Defendant's conduct as alleged herein above, including Plaintiff's constructive discharge.

174. Defendant PLX Inc. was proactively aided and abetted by all other Defendants named, in their individual, professional, official and controlling capacity in furtherance of such activity.

175. Plaintiff believes and alleges thereon that he was constructively discharged in retaliation for voicing inter alia, concerns about rules, laws and regulatory violations in violation of major public policies, involving Defendants, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by PLX Inc.'s own mandated policy.

176. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

177. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

178. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

179. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

### FIFTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### against all defendants
as active collusive participants, collaborators, conspirators, aiders and abettors

180. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

181. Plaintiff and PLX INC. had an agreement that Plaintiff would be able to perform the duties relevant to information systems in accordance with federal and state regulations and commonly understood business practices, without fear of losing his job, being threatened physically and otherwise, and without having his performance evaluation downgraded and bonus reduced because he spoke up about unlawful and improper practices at PLX INC. The agreement between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing, which obligated Defendant to perform

the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would deprive Plaintiff of the benefits of the agreement.

182. Plaintiff performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the agreement.

183. Defendant PLX INC. breached the implied covenant of good faith and fair dealing under the agreement when Plaintiff was constructively discharged for engaging in federal and NYS protected activity and for refusing to perform illegal work for defendants.

184. Plaintiff believes and alleges thereon that he was victimized in retaliation, for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendants, which violations he also believed in good faith to be criminal violations that jeopardized national security, and which voicing by Plaintiff was mandated by PLX INC.'s own mandated policy.

185. Upon information and belief, Defendant PLX INC., was proactively aided and abetted in such violation by all other Defendants named.

186. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

187. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

188. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

189. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

**SIXTH CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**against all Defendants**

190. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

191. The overtime wage provisions set forth in the FLSA, 29 U.S.C. 201 et seq., and the supporting federal regulations, apply to Defendant and protect Plaintiff.

192. Plaintiff worked in excess of 40 hours during workweeks in the relevant period.

193. Defendants intentionally, in violation of the FLSA, failed to pay plaintiff overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

194. Defendants' failure to pay plaintiff overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

195. Plaintiff believes and alleges thereon that defendants violated provisions of FLSA laws as alleged herein above.

196. As a result of Defendant's willful violations of the FLSA Plaintiff has suffered damages by being denied overtime compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. 201 et seq.

197. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

198. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

199. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### against all defendants

200. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

201. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant, and protect Plaintiff.

202. Defendant failed to pay Plaintiff the premium overtime wages to which he was entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times his regular rate of pay – for all hours worked beyond 40 per workweek.

203. Defendants' failure to pay plaintiff overtime compensation was willful within the meaning of New York Labor Law § 663.

204. Plaintiff believes and alleges thereon that defendants violated NYS labor laws as alleged herein above.

205. Due to Defendant's violations of the NYLL, Plaintiff is entitled to recover from Defendant this unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

206. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain injuries including but not limited to economic injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

207. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

208. Upon information and belief, and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

## EIGHTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Proper Wage Notices
### against all defendants

209. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

210. Defendant has failed to supply Plaintiff with proper wage notices, as required by NYLL, Article 6, 195(1) in English or in the language identified as his primary language, at the time of hiring, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

211. Due to Defendant's violations of NYLL, Article 6, 195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each workday that Defendant failed to provide him with wage notices, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, 198(1-b).

212. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

213. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### against all defendants

214. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

215. Defendant failed to supply Plaintiff with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay

and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked; including overtime hours worked if applicable; deductions; and net wages.

216. Due to Defendant's violations of NYLL, Article 6, 195(3), Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, 198(1-d).

217. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has sustained and continues to sustain injuries including but not limited to economic injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

218. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

219. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
## Intentional Infliction of Emotional Distress
## against All Defendants

220. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

221. Defendants intentionally engaged in outrageous conduct towards Plaintiff with the incorrupt intent to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress, and with wanton and reckless disregard for the injurious result to Plaintiff, as set forth hereinabove. The conduct set forth hereinabove was extreme and outrageous and an abuse of the authority and position of Defendants. The above-described conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress. This conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected from an employer.

222. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously,

fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights, thereby willfully and egregiously inflicting emotional distress upon Plaintiff.

223. As a proximate result of Defendants intentionally malicious collusive unlawful actions has sustained and continues to sustain injuries including extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

224. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

225. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. **On 1st Cause:**
 i. Awarding two times back pay and interest on the back pay and all special damages sustained as a result of PLX INC. and Defendants' retaliation and constructive discharge under Section 3730(h) of the False Claims Act, 31 U.S.C. 3730(h);
 ii. An injunction against PLX INC. be awarded declaring Plaintiff's constructive discharge wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded.
 iii. Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

B. **On 2nd Cause:**
 i. Awarding two times back pay and interest on the back pay and all special damages sustained as a result of Defendants' reprisal and retaliation and constructive discharge under Section 4712 of 41 U.S.C. 4712.
 ii. An injunction against PLX INC. be awarded declaring Plaintiff's retaliation and constructive discharge wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded.
 iii. Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

C. **On 3rd Cause:**

    **i.**      Awarding two times back pay and interest on the back pay and all special damages sustained as a result of Defendants' reprisal and retaliation and constructive discharge under NYLL Section 215.

    **ii.**    An injunction against PLX INC. be awarded declaring Plaintiff's retaliation and constructive discharge wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded.

    **iii.**   Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

D. **On 4TH Cause:**

    **i.**      Plaintiff has been damaged in an amount to be determined at trial but not less than $500,000.00;

    **ii.**    An injunction against PLX INC. be awarded declaring Plaintiff's retaliation and constructive discharge wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded;

    **iii.**   Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

E. **On 5th Cause:**

    **i.**      Plaintiff has been damaged in an amount to be determined at trial but not less than $500,000.00;

    **ii.**    An injunction against PLX INC. be awarded declaring Plaintiff's retaliation and constructive discharge wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded;

    **iii.**   Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

F. **On 6th Cause:**

    **i.**      Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

    **ii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

G. **On 7th Cause:**

    **i.**      Unpaid overtime wages and equal amount as liquidated damages pursuant permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations and under NYLL Article 19 section 663;

    **ii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and

Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

H. **On 8th Cause:**

   **i.** Statutory penalties of fifty dollars for each workday that Defendant failed to provide Plaintiff with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6, 198;

   **ii.** Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

I. **On 9th Cause:**

   **i.** Statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars, as provided for by NYLL, Article 6, 198;

   **ii.** Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

J. **On 10th Cause:**

   **i.** Plaintiff has been damaged in an amount to be determined at trial but not less than $500,000.00.

   **ii.** Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

Dated: Plainview, New York
      November 3, 2022

Harsharan Sethi, Plaintiff Pro se
2 Kenneth St., Plainview, NY 11803